Frank B. Sanders, Administrator, Appellant, v. Nancy J. Jarvis, Appellee.

1. GIFTS—*when shown.* Where a decedent had fully declared her intention that a deposit, evidenced by a certificate of deposit in favor of her sister and found among the decedent's effects, should go to such sister, and the latter had been fully informed in the lifetime of the donor that the deposit had been made, and it also appeared that the donee had requested decedent to keep the certificate for her, the finding in favor of the donee was sustained.

2. GIFTS—*sufficiency of evidence to show.* Uncontradicted testimony that a decedent had repeatedly stated that she had given a certain certificate of deposit in favor of her sister to such sister, and that the latter had requested decedent to keep it for her, was

not affected by the fact that the certificate was found in the effects of the donor after her decease.

3. APPEAL AND ERROR—*when admission of evidence harmless.* The admission of the contents of a letter would not have been reversible error on the ground that sufficient foundation had not been laid, where the contents were only cumulative evidence and only tended to prove what had been testified to by several uncontradicted witnesses.

Appeal from the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed March 30, 1921.

S. W. McKITTRICK, for appellant; W. P. EARLY, of counsel.

SPRINGER & BUCKLEY and BURROUGHS & RYDER, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Mary Matilda Barnsback, a woman about 75 years of age, residing at Edwardsville, Illinois, died May 30, 1919, leaving property valued at some $75,000. Frank B. Sanders, the public administrator of Madison county, the appellant here, was appointed administrator of her estate. She left no child or descendants of a child surviving her, but left a brother, two sisters and certain nieces and nephews as her heirs at law. Shortly after her death some of her relatives, while searching in her former residence for a supposed will, found in a dresser drawer, with a small amount of money and some other things, a certificate of deposit in the Bank of Edwardsville for the sum of $4,000, dated November 12, 1918, payable to the order of Nancy J. Jarvis, a sister of the deceased, in current funds, 6 months after date, with interest at the rate of 4 per cent per annum upon the return of the certificate properly indorsed.

At the time of the discovery of the certificate the

attention of Nancy J. Jarvis was called to it by her brother, Robert Montgomery, but she at that time appears to have made no statement in regard to the matter. Afterwards a petition was prepared having for its object the relinquishment by the adult heirs of the decedent of their interest in said certificate of deposit, and requesting the probate court to direct the administrator to deliver the same to Nancy J. Jarvis, the payee. This was signed by Robert Montgomery, the brother above mentioned, alone, the other parties interested refusing to sign the same, but was presented to the probate court, which entered an order denying the petition and an appeal to the circuit court was taken by Mrs. Jarvis. That court found that the certificate of deposit in question was the property of Nancy J. Jarvis and ordered that the same be turned over to her by the administrator, and from that order the administrator has appealed to this court, claiming that the proof in the case showed there was no delivery of the certificate of deposit shown to have been made to Mrs. Jarvis and that the trial court erred in the admission of certain evidence.

The proof, in regard to the making and subsequent disposition of the certificate of deposit as it appears from the record, was about as follows: Shortly prior to November 12, 1918, Mrs. Barnsback, the deceased, had sold her farm in Coles county, Illinois, for $65,000. She was assisted in investing this money by her attorney, Mr. George D. Burroughs. Among the securities she received was a note of $5,000 of one William H. Bohm, held by Mr. Burroughs, which he had assigned to Mrs. Barnsback. Later she went to Mr. Burroughs and told him she was anxious to get $5,000 which she wanted to go to her sister Nan, meaning appellee, Nancy J. Jarvis, and would like to dispose of the Bohm note to raise the money. To assist her in getting the money, Mr. Burroughs a week or ten days later gave her his check for $5,085, the amount

of the note and the interest due thereon. She at that time told him that she wanted to give the money to her sister Nan; that she was going to give her part of it in cash and part of it she was going to place in the bank on a certificate of deposit. Subsequently she told Mr. Burroughs that she had given $5,000 to her sister Nan; that she had put $1,000 to the credit of said sister on a checking account at a bank in Edwardsville and the other $4,000 she had placed in the bank for her in a time certificate- of deposit. S. V. Crossman, assistant cashier of the bank of Edwardsville, testified that on November 12, 1918, Mrs. Barnsback came to the bank and deposited the check of Mr. Burroughs for $5,085; that she directed him to place to the credit of Nancy J. Jarvis $4,000 in a six months' certificate and $500 on her checking account, leaving a balance of $585 to the credit of Mrs. Barnsback; that witness told her it would be necessary to get the signature of Mrs. Jarvis before the bank would honor her checks and gave her a signature card for that purpose, and this card afterwards came back signed by Nancy J. Jarvis; that later, on November 27, deceased deposited to the credit of Mrs. Jarvis the sum of $500 which was placed upon her checking account. Mrs. Barnsback was accompanied to the bank by Mrs. Katherine Roa, a neighbor and friend. She told Mrs. Roa some days before going to the bank about selling her farm and that she was going to give her sister, Mrs. Jarvis of Troy, $5,000, $1,000 of which was to be in cash and $4,000 in a certificate taken in Mrs. Jarvis' name. After leaving the bank, Mrs. Barnsback told Mrs. Roa that she had deposited $4,000 in a certificate in the name of Mrs. Jarvis but did not show her the certificate. Mrs. Barnsback also told Norma Jarvis, a granddaughter of appellee, that she had deposited $4,000 for her grandmother in a bank in Edwardsville. She told Lora A. Vancil, who lived with her as a companion for a number of months, that

she had deposited $4,000 in Mrs. Jarvis' name; that she had already given her $1,000 and that at her death Mrs. Jarvis would share as to the rest. The whole proof shows without contradiction that Mrs. Barnsback was very fond of her sister Mrs. Jarvis, who was somewhat her senior in years and in poor health, and that it was her fixed intention to give Mrs. Jarvis $5,000 out of the money received by her from the sale of her farm and also permit her to share in the balance of the property with the other heirs at law.

Notwithstanding the uncontradicted proof that deceased desired to give appellee $4,000 and for that purpose deposited the money upon a time certificate of deposit in the bank to the credit of appellee, it is contended by appellant that appellee is not entitled to the certificate of deposit or the money in the bank it represents, because there was no delivery of the certificate to her in the lifetime of deceased. It is true that where money is deposited in a bank in the name of another and the certificate of deposit is retained by the depositor in his own possession but there is no declaration of trust made or circumstances showing an intention to vest the title in the donee, and the donee was ignorant of the deposit until after the death of the donor, that the title to the fund does not pass to the donee. *Telford v. Patton,* 144 Ill. 611; *Erwin v. Felter,* 283 Ill. 36. In this case, however, deceased declared fully her intention concerning the deposit and appellee was fully informed in the lifetime of the donor that the deposit had been made. The certificate itself provided as follows: "Nancy J. Jarvis has deposited in this bank payable to the order of herself in current funds, $4,000. On the return of this certificate properly endorsed, six months after date, with interest at 4 per cent per annum." The certificate also stated that the fund was "not subject to check." Under the wording of this certificate it would appear that at no time after the deposit was

made could it have been withdrawn from the bank
without the return of the certificate, indorsed by Mrs.
Jarvis, and that Mrs. Barnsback had lost control over
the fund and the right to withdraw it without the
consent of Mrs. Jarvis indicated by her indorsement,
but, regardless of this question, the evidence here
clearly shows that there was a delivery of the certifi-
cate to appellee in the lifetime of the decedent. Mr.
Burroughs, above referred to, testified that after the
certificate had been taken out, Mrs. Barnsback told
him that she had been down to Troy where her sister
lived "and gave this money or this certificate to her
sister"; that she had brought the certificate back with
her to keep for her sister as that was her sister's
wish. Mrs. Bina K. Wolf, a cousin of the deceased,
who lived only two blocks from her, after testifying
to a conversation in which Mrs. Barnsback told her
that she wanted to give appellee $4,000 in a certificate,
said that later, about one or two months before the
death of Mrs. Barnsback, the latter told her, "I have
a certificate of deposit for my sister Nan for $4,000
and I gave it to her in Troy, but I took a notion I
would bring it back for safekeeping and put in the
Bank of Edwardsville." Another witness, Caroline
E. Wolf, a daughter of the preceding witness, testified
that Mrs. Barnsback said she had given the certificate
to Mrs. Jarvis and had brought it back for safekeep-
ing. This proof was not contradicted, and the plain
evidence that the certificate was delivered by Mrs.
Barnsback in her lifetime to appellee is not affected
by the fact that it was found in the effects of the
donor after her decease. *Hagemann v. Hagemann,*
90 Ill. App. 251. The title to the certificate absolutely
vested in appellee at the time of its delivery to her,
if indeed actual delivery were necessary, and the re-
turn of the same to the donor for safekeeping could
not affect appellee's right therein.

Complaint is made by appellant of the admission

in evidence of a letter claimed by the witness, Norma Jarvis, to have been received by appellee from Mrs. Barnsback in which the latter told her sister that she had deposited $4,000 for her at the bank in Edwardsville. This letter was stated by the witness to have been lost, and the objection by the appellant is that sufficient foundation had not been laid for the admission of proof of its contents. It may be said that the contents of this letter as testified to was only cumulative evidence and the statement said to be contained in it only tended to prove what had been testified to by several witnesses and was wholly uncontradicted. The admission of the letter, even if improper, would not have constituted reversible error under these circumstances, but in our opinion sufficient foundation was laid by proof of the loss of and search for the same to authorize the introduction of secondary evidence concerning its contents. The judgment of the court below will be affirmed.

*Affirmed.*