Goldie Levites, Appellant, v. Charles Levites, Sophia Dunn, a/k/a Sophia Williams, Ida Rosen, Stacie Ellyn Geller, Florence Geller, Warren S. Rosen, and Lawrence Dunn, Defendants-Appellees.

Gen. No. 47,912.

First District, Second Division.

October 4, 1960.

Harry J. Myerson, of Chicago (John Spalding, of counsel) for appellant.

Nat M. Kahn, of Chicago, for appellees, Ida Rosen, Stacie Ellyn Geller, and Warren S. Rosen.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Goldie Levites married Samuel Levites on December 4, 1938. The parties had adult children born of prior marriages. They both worked after their marriage. During November, 1950, they sold their interest in a land trust and made an equal division of the proceeds, each retaining $19,000 as his and her sole property. He had no other property. On November 1, 1950, he was afflicted with cancer and in danger of death. He used about $17,000 of his funds to purchase U. S. Savings Bonds, Series E, in various denominations payable to himself, his children, grandchildren and great-grandchildren in the following manner: "Samuel Levites or Ida Rosen." All the bonds were similarly issued. After the purchase of the bonds he redeemed $1100 of them and used the proceeds for personal purposes. He died

on January 22, 1951, intestate. The bonds remained in decedent's exclusive possession until his death. The widow filed a complaint in equity seeking an accounting from the alternative payees of the bonds. The chancellor allowed the defendants' motion for judgment on the pleadings and dismissed the amended complaint for want of equity, to reverse which plaintiff appeals.

██ Plaintiff maintains that the decedent's purchase of the bonds in alternative form during his last illness with intent to exclude her from participation in his estate was a fraud on her marital rights. The widow, conceding the rule that a husband may dispose absolutely of a part or all his personal property during coverture and that the transfer or gift does not constitute a fraud upon the wife, states that the indispensable factor is that the transfer be absolute, and that if the disposition be not absolute, the transfer is "colorable" or "illusory" and a fraud on the wife's marital rights. 41 C.J.S., Husband and Wife, Sec. 20; Padfield v. Padfield, 78 Ill. 16, 18; Holmes v. Mims, 1 Ill.2d 274, 115 N.E.2d 790; Smith v. Northern Trust Co., 322 Ill. App. 168, 173, 54 N.E.2d 75; Milewski v. Milewski, 351 Ill. App. 158, 165, 114 N.E.2d 419. In Deke v. Huenkemeier, 289 Ill. 148, 124 N. E. 381, the court held that a wife has the same rights and is in the same status as a defrauded creditor where the husband makes an illusory or revocable transfer of personal property. See also Blankenship v. Hall, 233 Ill. 116, 84 N. E. 192. Plaintiff insists that the transaction in the case at bar was revocable, colorable or illusory, intended as a substitute for a testamentary disposition, and in consequence a fraud upon her marital rights. She calls attention to the fact that during her husband's lifetime the bonds were redeemable by him at his option, and that in fact he redeemed and used $1100 of the bonds.

The chancellor relied upon Section 315–45(c) of the federal regulations and Section 2(d) of the Act in relation to Joint Rights and Obligations (Ill. Rev. Stats. 1959, Ch. 76, Par. 2). Plaintiff asserts that the treasury regulations are designed solely to facilitate payment of outstanding bonds and not to insulate fraudulent transactions from state law. Anderson v. Benson, 117 F. Supp. 765; Moore v. Brodrick, 123 F. Supp. 108; Silverman v. McGinnes, 58–2 USTC, 2 CCH Fed. Est. and Gift Reporter, 8122, 259 F.2d 731; Zimmerman v. Schuster, 14 Ill.App.2d 535, 145 N.E.2d 94, and other cases. She also asserts that Section 2(d) of the Act in relation to Joint Rights and Obligations is not designed to create a survivorship device beyond the scope of remedies for fraudulent transfers, citing In re Estate of Wilson, 404 Ill. 207, 210, 88 N.E.2d 662; Johnson v. Mueller, 346 Ill. App. 199, 203, 104 N.E.2d 651; and other cases. She urges that her husband did not intend to make a personal gift when he bought the bonds, that he intended that the bonds should be his sole property as long as he lived to do with them as he wished, and that defendants' answer admits this to be true.

■ Notwithstanding the sweeping effect of the federal regulations and Section 2 of the Illinois Joint Rights and Obligations Act which confer absolute title to the bonds to surviving co-owners or death beneficiaries, it is evident that when cases with special facts are presented a constructive or resulting trust may be impressed against the bonds, such as where a thief steals a person's money and purchases bonds and they can be traced, where bonds are purchased by one spouse with the joint funds of both and the purchaser wrongfully names himself and other persons as co-owners, or where one spouse uses his funds to purchase bonds and places them in the name of himself and others as co-owners in violation of an agreement to make joint and reciprocal wills. Only when unusual

facts and special equities exist can a constructive trust be impressed on bonds wrongfully acquired. See Alexander v. Mermel, No. 47921, Ill. App. Ct. 1st Dist. In the instant case plaintiff had no equities or rights in the funds that her husband used to buy the bonds. She acquired no rights to the bonds by her status as a surviving spouse. We have carefully examined the cases cited to support her theory and find that they are not applicable to the factual situation presented.

There is no conflict between the federal regulations and the Illinois law. They are consistent and complement each other. The significant words in the federal regulations that the survivor shall become the "sole and absolute owner of the bonds" mean what they say. The plain words in the Illinois statute that upon the death of one registered co-owner the bonds become the property of the survivor must also be given their clear and ordinary meaning. There is no proviso or exception in the regulations or the statute in favor of a surviving spouse of the original purchaser of the bonds. The only exception is where a constructive trust is established. We are not concerned with that in the instant case as plaintiff relies on her status as the surviving spouse. Many authorities support the unconditional title of the survivor and these are collected in the following annotations: 37 A.L.R.2d 1223; 161 A.L.R. 304; 158 A.L.R. 1473; 157 A.L.R. 1461; 154 A.L.R. 1466; 151 A.L.R. 1467; 149 A.L.R. 1471. These authorities hold that the designated co-owner or the death beneficiary acquires a present interest in the bonds with the enjoyment of their use postponed until the death of the purchaser.

 It is settled that upon the purchase of bonds by one person, another person designated as co-owner or the designated death beneficiary acquires a present interest in the bonds. In re Barnes' Will, 4 Wis.2d 22, 89 N.W.2d 807; Cornelison v. Walters, 178 Kan. 607,

290 Pac.2d 1016; Application of Laundree, 100 N.Y.S. 2d 146 (App. Div.); Superat v. Dylawski, 93 N.Y.S.2d 40; In re Staheli's Will, 57 N.Y.S.2d 185. It is also well settled that even though the original purchaser retains sole possession of the bonds, the present interest of the co-owner or designated death beneficiary ripens into absolute title in the survivor. In re Perlmutter's Will, 98 N.Y.S.2d 968; Chamberlain v. Robinson, 305 S.W.2d 817 (Tex.); Parkinson v. Wood, 320 Mich. 143, 30 N.W.2d 813. We are of the opinion that the interest of the co-owners of the bonds, the defendants, ripened into absolute ownership upon the death of Samuel Levites free of any claim of the plaintiff. Neither the regulation nor the statute requires that the survivor shall have possession of the bonds during the lifetime of the purchaser. We are aware that plaintiff in her amended complaint alleges that her late husband bought the bonds "with the purpose and intent of retaining sole ownership, possession and use thereof" during his lifetime, and that the defendants in their answer admit that they did not acquire any interest in the bonds until after the death of the purchaser. We agree with defendants that the admission was an erroneous legal conclusion. A number of situations have arisen wherein the purchaser who retains possession of the bonds becomes incompetent and the conservator of his estate, upon order of court, has cashed the bonds without the consent or knowledge of the co-owner or designated death beneficiary. Where the funds were unnecessary to support the incompetent co-owner, the courts have held that when the ward dies under these circumstances, the surviving co-owner or death beneficiary can recover the entire funds from the estate of the deceased co-owner who was declared incompetent. In re Estate of Johnson, 351 Ill. App. 111, 113 N.E.2d 590; Morris v. Morris, 195 Tenn. 133, 258 S.W.2d 732; In re Barnes' Will, supra.; In re

Church's Estate, 141 F. Supp. 703; Barletta's Estate, 150 N.Y.S.2d 479; Cornelison v. Walters, supra. The authorities support the view of the chancellor that the defendants and the surviving co-owners acquired absolute title to the bonds upon the death of Samuel Levites, and that plaintiff, as surviving spouse, did not acquire any title to the bonds, nor did they become part of the decedent's estate. In re Kalina's Estate, 53 N.Y.S.2d 775. This case was the basis of the chancellor's opinion. Although this is an opinion of the Surrogate of King's County, New York, it is one of the leading cases on the subject and has been followed by other New York authorities and by courts of review of other states. See Parkinson v. Wood, supra.; Application of Laundree, supra; In re Sturmer's Estate, 101 N.Y.S.2d 25; In re Perlmutter's Will, supra. In the case at bar the purchase of the bonds by Samuel Levites who had them issued in his name and that of his children, grandchildren and great-grandchildren as respective co-owners was not colorable or illusory. The arrangement did not purport to be anything other than co-ownership with right of survivorship.

For these reasons the decree is affirmed.

Decree affirmed.

FRIEND and BRYANT, JJ., concur.